At sentencing, Mr. Cibrian asked the court to uphold one of the three fundamental policy rationales of the sentencing guidelines, imposing sentences based on real offense conduct and sentence him on the fact that he was responsible for only the 30 kilograms he was personally carrying. On that basis, the high-end guideline sentence of 51 months was sufficient and no further court unreasonably denied the request, and this Court should vacate and remand for resentencing. Now, the arguments in the briefs were maybe a little unclear exactly. I wanted to start off by putting it in perspective and pointing out kind of an overview what the argument was here. This was basically an argument. The defense was arguing for a deviation, a term of art, following a two-step process. Sotomayor A departure? Cibrian-Quintero A deviation, yes. Sotomayor A Okay. So how is a deviation different from a departure or a variance? Cibrian-Quintero Well, evidence Martinez says the use of the term deviation for a departure, deviation, or a combination of both. Some departure, some change, some variance away from the guideline sentence, whether it's by departure or variance or a combination of the two. Sotomayor A Okay. Cibrian-Quintero So it's a term, and that was expressly the term that was used in sentencing, some sort of deviation, leaving it to the court how it was going to decide how it would reach that correct sentence. But this was in a two-step reasoning process. First step was citing Palafox-Mazon. It pointed to the facts that the conduct, real conduct here of Mr. Cibrian, only would hold him responsible for the 30 kilos that he was actually carrying. The second part was, based on this fact, to deviate from the career offender sentence to reflect that actual amount, not the amount that is reflected in the plea, but the actual amount that he carried. And this argument was based expressly on the court's authority under Kimbrough. And that's made clear in the defense sentencing memorandum. And I apologize to the court because that sentencing memorandum was not put into the excerpts. It is in the record. It is docket entry number 74 in the clerk's report. But in that defense sentencing memorandum, it very clearly relied on the authority of Kimbrough that the sentencing guidelines for a career offender were not based on empirical evidence, and that because of the flaws in that, the court should not follow them literally. But using the reasoning and the argument based on the Palafox analysis, that he should be sentenced only for the 30 kilograms for which he was personally responsible, essentially asking the district court to follow the real offense conduct in sentencing. So what exactly did your client plead guilty to? He pled and was convicted of a count which specified 90 kilograms. But at the plea colloquy, counsel specifically put on the record, this is at ER page 43, counsel specifically said that each of them was carrying 30 kilograms in aggregate, 90 kilograms. Now, she put on the record that they were claiming that he was only responsible for the 30. And this seems to me exactly what the court was expecting to happen in Aguila Montes de Olca when they said that at a plea colloquy, if a defendant doesn't agree with all the allegations and the count to which he's pleading guilty, he should at least put it on the record and somehow dispute the fact that it's not the specific allegation that he is nonetheless pleading guilty to and will be convicted of, at least make that clear. And that's what counsel here did. There's nothing more she could have done. Although, counsel, on the facts, though, we have to figure out whether or not there were facts that support jointly undertaken activity, right? And so my understanding was that your client had a cell phone and at the staging area, he was with another defendant, Defendant Vega, who didn't have a phone and they were supposed to wait for the call to tell them where to go. Isn't that evidence of cooperative and joint activity? No, Your Honor. I think this case is very much like Palafox. In fact, the only way that it differs from Palafox is in ways that I think strengthen the inference of independent action. And if I may, I will get to the cell phone question, but perhaps I can just run through the facts that I think are similar here. Well, can I just ask a predicate question? Did the district court actually specifically make a finding that your client was accountable for 90 kilograms? I'm afraid it's not clear. I mean, you notice that from the sentencing transcript, the word Kimbrough wasn't mentioned or anything. So it wasn't clear what the basis of this argument was or whether Judge Hayes appreciated his Kimbrough authority, which the court knows under United States v. Henderson may be a separate problem. But he seemed to be focused on, are you asking me to sentence him as if he pled to something else when he pled to 90 kilograms? And counsel, I think, maybe inartfully tried to say, no, we agree that he pled to a count that said 90 kilograms and that's what the career offender looks at. But I want you to sentence him according to his real offense conduct because it was only 30 that he actually was responsible for under the Palafox analysis. Under Palafox, there's many similarities here. They were not hired together. All three men were not hired together. They were hired separately. They met, came together individually at the starting point, but there was no evidence that they knew each other before then or had coordinated. If they didn't know each other or coordinate, I noticed that they all wore the same type of military style camouflage clothes and they all wore cloth booties over their shoes. That's not coincidence. Well, Your Honor, no, it's not because these are standard tools of the trade, I would imagine, for a smuggler. If you're going to smuggle things across the border at night, you're not going to wear gaudy, flashy clothes. You're going to wear something that's camouflaged. That doesn't require coordination. That just requires common sense or be an experienced smuggler. These are just good smuggling practices. And as far as wearing the cloths on your feet, that's something that's not unique to smuggling either. You don't have to coordinate that. I mean, many illegal entry cases involve people, illegal entrants, who cover their feet with cloths to hide their footprints and make it harder. So these are just tools of the trade. They don't show coordinated activity. The three could have done that independently. But someone coordinated them. Yes, they were hired by someone else. They were brought together at that point. The loads were already pre-dolled out when they arrived. They didn't determine what loads they were going to carry. Someone else gave them their backpacks with the fixed amount, happened to be an equal distribution. How do you distinguish the facts of your case from Dahlman? I think the most important thing about Dahlman is that that's a case that involves someone who pled guilty to a conspiracy. Mr. Cibrian was charged with a conspiracy, but he didn't plead guilty. The other defendants pled guilty to conspiracy. The other defendants did. But I think when we look at technically whether Mr. I mean, as long as we're going to hold Mr. Cibrian to his plea and say, well, it's 90 kilograms, he should be held to the plea that he pled guilty and was only found guilty of, not conspiracy, but of crossing the border. I really am most interested in the cell phone because the other defendant, Mr. Vega, could not have known where to go but for the assistance provided by your client. Well, respectfully, Judge Simon, that's not true because the facts are, as reflected in the PSR, it said that each of the individuals knew independently how to get to the water tanks, which was the area for the drop off. That is, none of them was dependent on the other to get to the location, unlike Palafox, where there was a guide, and only the guide knew where to go. Here, the major difference with Palafox, but a strengthening difference, is that each man could have independently traveled to the drop off point alone. The fact that two of them had cell phones doesn't necessarily mean that they were dependent on each other for that, because they could all travel there. And I would just point out, this could be just fortuitous that two men travel together, because take, for instance, if there are only two routes to the water tanks, there's only mathematically two ways three people could travel those routes. Either all three go together, or two go one way and one goes the other. Maybe if there were three routes, they would have all gone three separate ways. So it could be just totally fortuitous that two men travel together and one traveled alone. If they could, maybe all three would have gone separate ways, since they all knew where to go. And the same thing, the wearing the camouflage, the booties, that's just tools of the trade. Similarly, the government points to the fact that all of them dropped off their loads before they actually went to the water tanks. But again, that's good practice, because you don't want to rush out into the open where maybe people are waiting with carrying the contraband. You maybe drop it off, check it out, see if anyone's there, and then go bring it back. But that doesn't mean you coordinated that. Again, these may be experienced smugglers, and that they know that that's just good practice. So none of the facts- So if we agree with you and determined that he should have been held accountable for only 30 kilograms, how does that affect the sentencing? What would you be asking us to do? I think we need to remand, because it didn't seem that Judge Hayes was willing to accept, for number one, a case that truly matches the same facts in Palafox, and that therefore should show that there is divisible responsibility. That sounds like clear error. That sounds like legal error, that he's misapplied the legal precedent of Palafox. It should be remanded for reconsideration under that standard. Also, it's not clear, as I said from the record, that the judge actually understood and applied his Kimbrough discretion. He kept saying, I've got to sentence him based on what he pled to. I have to sentence him based on what he pled to. It doesn't seem, it's at least as ambiguous as the Henderson case, where the judge actually acknowledged the Kimbrough argument and says, well, I don't, I need guidance from the Ninth Circuit. I'm not going to apply this. At least you go back so Judge Hayes could say clearly and specifically, yes, I'm rejecting your Kimbrough argument. I am not going to deviate from the career offender to reflect real offense conduct. I want to clarify your position with regard to the appropriate standard of review. Are you saying that he didn't make factual findings such that the standard will be reviewed for clear error because he somehow misunderstood the scope of his discretion? Did I get your argument correct? Yeah, I was struggling myself. I didn't write the verse here, so it's not exactly the way I would word it. I was struggling myself to confess that I had some hard time figuring out what would be the applicable standard of error here, but I think there's a couple of complications here, quite frankly, is that one, the argument was based on Palafox, which is a pre-Booker case, which means that it was a guidelines case. I mean, but guidelines error doesn't mean the same thing now as it did then, so what exactly, how would we view that? He misapplied a legal precedent, Palafox. Here is a case where the facts matched a decision in Palafox, and the court didn't grant that there was a distributed responsibility. That sounds like legal error to me, because he's misapplying a precedent. Moreover, it's a precedent about guidelines interpretation and application, which, as Del Monte said, is ruby de novo. Well, that's, you're arguing procedural error. Yes, well, that is procedural. I would say the result also was substantive error, which, because the sentence is too high for his responsibility, his culpability. That's a substantive reasonableness argument, which is also abuse of discretion. But you're saying he miscalculated the guideline range. No, not technically, Your Honor. We have to admit that that was the guideline range applied with the count that he was convicted of. But as Palafox says, just because you plead to a certain amount doesn't mean you can't sentence on the real facts. And they took issue with the Tenth Circuit case on that very point. That's on page 11090, footnote 4 of Palafox. They said, well, yes, you could plead to a certain amount, but you could sentence on the basis of what the person really was responsible for. And that's the situation here. Of course, he pled to a count that said 90 kilograms. And that's what would apply for the career offender. But Mr. Cibrian was arguing that the career offender guideline should not be followed under Kimbrough, and that instead the court should follow the cardinal rule of real offense conduct, which, in this case, was actually higher than the apical career offender level. Is there evidence in the record that they were individually and separately recruited? There is no evidence to show that they were they all arrived there. There was no indication that they knew each other. Mr. Cibrian said, you know, he was he came there. There's nothing to show any more than in Palafox that they were grouped together. They came to some informational meeting, and they all joined up at that time. I thought Palafox, there was evidence of individual and separate recruitment. Well, there was that fine. Well, that's what the court, the Ninth Circuit does say that, that they were independently hired in Palafox. Yes. And it could be just because there's no evidence that they knew each other beforehand or that this was some kind of recruiting drive. I say there's just no evidence here to show that they were anything but separate, that they knew each other beforehand. That's unlike a case that Palafox distinguishes, where the Confederates knew each other and worked together for weeks before the actual smuggling event. Now, here, there's nothing to show that they met for the first time here, that they had ever talked to or planned or coordinated anyway. And they were given separate loads and sent out, and importantly, split up soon afterwards and were working independently. The PSR says that Sibrian stated he was being paid $400 to smuggle the marijuana into the United States, and that he was following the other individual named Juan. So he was paid separate, I mean, there is an inference of separate hiring from that. Yes, he was being paid a fixed amount of what, per two loads, apparently. He had his own separate arrangement with the organizers of this. I mean, there's nothing, I mean, in our record here, there's no evidence of what was going on with the other co-defendants. So there was some coincidence, there was some coinciding of certain behavior, but I say this is just in the nature of the smuggling. Wearing certain protective clothing, acting in certain ways, that's all typical. Having certain tools of the trade, one person had a pocket knife, another person had a specially designed weapon. In fact, Judge Hayes found that Mr. Sibrian's pocket knife was not a weapon, so it was there maybe for whittling or digging a hole or something. Another person had night vision goggles. But if they were using this in conjunction, it makes no sense that they split up, because how could they use these tools to help each other if they're not all traveling together? So again, that's not a sign that they had these tools for the purpose of aiding each other. It could be that they all brought them individually to help themselves as independent contractors to achieve their goal, regardless of whether the other two made it through or not. All right, Kenzo, you're well over your time, so thank you. May it please the Court, Jamie Parks for the United States. This defendant was indicted for his involvement in importing 90 kilograms of cocaine, and he pled guilty to that offense. At the excerpts of record on page 42, the Court asks him if he's pleading guilty to bringing in 90 kilograms of marijuana, and he indicates that he was. In the end, the sentencing judge, Judge Hayes, considered both of the guideline ranges. So when the Court is trying to ascertain what the appropriate standard of review is, it absolutely has to be clear error, because the question here is not whether the Court correctly calculated the guidelines, but whether there was this joint concerted effort. And I think the Court has to be clear on that. What factual findings did the sentencing judge make, if any, with regard specifically to how the facts reflected a joint undertaking? The Court cited a number of factors. He looked at the fact, which defense counsel represented at the sentencing hearing at ER 11, that they were all hired by the same individual. They traveled together. They picked up their marijuana backpacks at the same time. They were wearing similar camouflage clothing. They were wearing similar booties. Two of them, including this defendant, Cibrian, traveled together, and there were only two cellular phones, which meant to contact the person who was supposed to meet them at the water tanks to pick up the marijuana backpacks, someone would have had to have placed that call, and they couldn't have, each three of them, done it individually. Cibrian was the one who stayed with the other co-defendant who did not have a cell phone, is that correct? That's correct. And there's also the fact in the record that this defendant was, based on intelligence information, the leader of the smuggling organization operating in Campo, and that is also borne out by his prior conviction in 2009, which is one of the predicate convictions to apply the career offender guidelines, that he was smuggling marijuana backpack in the same area that he was apprehended on this occasion. But I think it's very important to realize that the court considered Ms. Mitchell's argument at sentencing that the defendant only had 30 kilograms of marijuana in his backpack and looked at the applicable guideline range there. He chose to calculate it based on the fact that there was a joint undertaking and that the defendant did plead guilty to the importation of 90 kilograms of marijuana. But ultimately, at ER 27, the court found that it wasn't a dispositive factor for him whether it was 30 kilograms or whether it was 90 kilograms. He considered the guidelines, chose to depart downward 67 months based on the fact that the defendant hadn't spent a significant amount of time in custody. So to say that the court didn't properly consider the argument that he only had 30 kilograms of marijuana in his backpack I think is unfair to Judge Hayes and to the record that he did set to support this sentence. And finally, to rely on Palafox, which was a government appeal, and to say that that district court didn't engage in clear error when he made a finding that there was no jointly undertaken criminal activity by the individual couriers, in this case, simply doesn't make sense because the record is there that supports the joint criminal undertaking, that supports the application or the calculation of the higher guideline range, which ultimately District Judge Hayes chose not to impose, departing downward 67 months and imposing sentence on Mr. Cibrian. Where exactly did the court make the finding that it was concerted jointly undertaken criminal conduct? The court doesn't use that language. I know. So I'm asking where exactly are you finding the inference that he made that finding? Because usually we expect that if you're going to be sentenced on the basis of that enhancement, the judge would make a finding about it. Yes, Your Honor. If the court would look at excerpts of Record 27, the last paragraph, the court is going to say, is that the sentencing? It is part of the sentencing. And the court says even if you consider, well, he only carried 30, he is part of the group that smuggled the other 60, and I don't find whether it's 30 or 90 is to be the determining factor. So it's right there that the court says he was part of the group. So part of the group. But is that, does that satisfy the, I mean, if you were all, like, the case that your opposing counsel relies upon, which is, what is it, largely, is it Dahlman or Halifax? Halifax. Halifax. Okay. There was a group there as well. There was a group in Halifax. And they were independently hired. They were, which is not the case here. On excerpts of record 11, defense counsel recognizes that in this case, the couriers were all hired by the same individual. But. Wait a second. Independently hired does not mean that they were hired by different people. Independently hired means they could be all hired independently by the same person. So how does that make a difference? I think when they're hired by the same individual, they're provided with backpacks at the same location. Is there any other? They were provided. They were provided with three separate backpacks. They were equally loaded with 30 kilograms of marijuana. But to return to what I think the Court's question was, is what in the record supports the Court's finding? Where does the Court make the finding? That's what I've been trying to find. I don't think the Court uses that language. But because the appellate court, the answer to your question, Your Honor, maybe is that the Court didn't. But my argument is that there are more than sufficient facts in the record to infer that the Court made that finding, whether it's, yes, they traveled in a group, or whether it was the district court's enumeration of the specific factors that would have supported that finding. So when the appellate court then applies clear error to facts that District Judge Heath put on the record, I think it clearly supports the finding that this was a jointly undertaken, concerted criminal activity. And that portion of the record, perhaps, some of that is on excerpts of record page 22, where the judge is describing the offense. Should we infer from the fact that the judge did not make an expressed finding that he felt himself bound and therefore didn't apply Kimbrough correctly? I don't think so, Your Honor. It was clear from the record that the judge understood he had the discretion to part downward for two reasons. One, because he says that it's not a determinative factor for him ultimately in what sentence is appropriate, whether it was 30 or 90 kilograms for which the defendant was responsible. But second of all, clearly he understood his discretion because he departed downward 60-some-odd months in ultimately imposing a sentence on Mr. Cibrian. Well, I'm trying to blank now. What would have been the guideline sentence if he only found, or the guideline range if he only found 30 kilograms? I think it was 41 to 51 months, Your Honor. It was the same guideline range that defense counsel was recommending to him at sentencing. Because 30 kilograms would have triggered a base offense level 18, and the government did move three points for acceptance of responsibility, and that would result under the career offender guidelines in a criminal history category 6, 41 to 51 months. What was he actually sentenced to? He was sentenced to 84 months. So that would be well beyond the range, even considering the departure of if he had – if only 30 kilograms had been attributable to him. That's correct, Your Honor. He was basically sentenced between 84 and 84 months. I don't mean the two guideline ranges when the Court considered both of them. But I think what's important to recognize is that the Court considered this as a jointly undertaken activity. That's what the defendant was charged with, what he pled to, and what the facts in the record support, which are very similar facts to Dahlman. And in the appellate court, Your Honors are being asked to consider whether he clearly erred in looking at factors like they were hired by the same person, they traveled together, they were headed to the same destination, they were going to call the same person to come pick up the marijuana from them, they were dressed similarly, they were wearing booties, and there were only two cell phones among the group. And the Court also discussed the equipment that was found with them, the improvised weapon, the pocket knife on Mr. Cibrian, and then the other defendant had night vision goggles. And so using that equipment together, they were able to successfully – well, until they got caught anyways – get from Mexico to the staging area where the water tanks were. How does the career offender guideline play into this? The defendant has two qualifying marijuana convictions, 2004 and 2009, both of which had similar facts. And so those are the two qualifying convictions that trigger the career offender guidelines. Career offender guidelines, as they were calculated by the Court to reach the higher guideline range, basically move him to a criminal history Category 6 and increase his base offense level. So in order for the other guideline range, which the Court did consider to be applicable, he basically would have had to have pled guilty to a different offense. Does anyone have any other questions? Okay, thank you very much, Counsel. Thank you. The United States v. Cibrian Quintero will be submitted.
judges: Simon, Wardlaw, Nguyen